UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEBRA CRIGGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:21-cv-00508 |
| ) | |
| STATE FARM FIRE AND CASUALTY ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This is an insurance coverage dispute governed by Tennessee law. Specifically, Debra Crigger sues State Farm Fire and Casualty Company for breach of contract and bad faith because it refused to pay under her homeowner's insurance policy for damage to her personal property.

### I. Factual Background

Ms. Crigger owned 2,291 copies of a paperback book titled THE EARLY DAYS: AN INSIDE STORY OF NASHVILLE'S COUNTRY MUSIC BIZ; 4,500 posters of The Wendt Brothers; and 200 copies of the *Pedal Steel.us* magazine. All of those items were new and stored in the carport attached to her residence located at 745 Drummond Court, Nashville, Tennessee. Both the residence and carport were insured by State Farm.

The items were stored in a homemade container built by Ms. Crigger and Terry Wendt, who lived at the residence, but was not a named insured in the State Farm policy. Two sides of the container consisted of the outside rear walls of the main residence, while the other two sides were made of wooden privacy fencing. Plastic sheeting covered the top of the container to provide protection from the elements.

On February 18, 2021, the weight of ice and snow from a winter storm cause the carport to collapse. Here are before and after pictures:





2

After the storm, Ms. Crigger made a claim for both structural and personal property damage under her policy. Only the personal property claim in the amount of $129,856.80 (that State Farm refused to pay) is at issue in this case. That issue is now crystalized in the form of Ms. Crigger's Motion for Partial Summary Judgment (Doc. No. 30) on her breach of contract claim and State Farm's Motion for Summary Judgment (Doc. No. 33) in which it asserts there was no breach of contract, thereby obviating the need for a jury to consider Ms. Crigger's additional claim for bad faith refusal to pay and the possibility of punitive damages.

## II. Standard of Review

The standards governing summary judgment are well-known, having been restated on countless occasions. Put succinctly: (1) summary judgment is only appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a); (2) the facts and inferences must be construed in favor of the nonmoving party, Van Gorder v. Grand Trunk W. R.R., Inc., 509 F.3d 265, 268 (6th Cir. 2007); (3) the Court does not weigh the evidence, or judge the credibility of witnesses when ruling on the motion, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); and (4) the mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment, Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). Furthermore, "[t]he standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." Ferro Corp. v. Cookson Group, PLC, 585 F.3d 946, 949 (6th Cir. 2009).

## III. Application of Law

The general rules of law surrounding insurance claims are also well-known, at least among

3

Case 3:21-cv-00508   Document 46   Filed 09/06/22   Page 3 of 8 PageID #: 489

members of the insurance bar. Under Tennessee law, "[i]nsurance contracts are subject to the same rules of construction as contracts generally[.]" Clark v. Sputniks, LLC, 368 S.W.3d 431, 441 (Tenn. 2012) (internal quotation marks and citation omitted). "The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc., 521 S.W.2d 578, 580 (Tenn. 1975). "If the language of the contract is clear and unambiguous," the Court will determine the parties' intent from the four corners of the contract by interpreting the contract "according to its plain terms as written" and "giv[ing] reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect." Maggart v. Almany Realtors Inc., 259 S.W.3d 700, 704 (Tenn. 2008) (citations omitted). The reasonable "meaning envisioned is the meaning which the average policy holder and insurer would attach to the policy language," and "[t]he language of an insurance contract must be read as a layman would read it." S. Tr. Ins. Co. v. Phillips, 474 S.W.3d 660, 667 (Tenn. Ct. App. 2015).

In arriving at the intent of the parties, the Court "does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written." Rainey v. Stansell, 836 S.W.2d 117, 119 (Tenn. Ct. App. 1992). Therefore, in the absence of fraud or mistake, "courts should construe unambiguous written contracts as they find them," even if "the contract later proves to be burdensome or unwise." Ellis v. Pauline S. Sprouse Residuary Tr., 280 S.W.3d 806, 814 (Tenn. 2009) (citing Boyd v. Comdata Network, Inc., 88 S.W.3d 203, 223 (Tenn. Ct. App. 2002)).

In this case, Ms. Crigger contends that her damaged personal property is covered by either of two of the 17 named perils in homeowner's policy – the "Falling Object" or "Weight of Ice,

4

Snow, or Sleet" peril. With regard to personal property coverage, the policy provides in relevant part:

**SECTION I – LOSSES INSURED**

**COVERAGE B – PERSONAL PROPERTY**

**We** will pay for accidental direct physical loss to the property described in Coverage B caused by the following perils, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include and we will not pay for any **diminution in value**.

     \*     \*     \*

10. **Falling objects.** This peril does not include loss to property contained in a structure unless the roof or an exterior wall of the structure is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** that causes damage to property contained in a structure.

(Doc. No. 32-1 at 12, 14) (bold in original).

  So far as the Court can tell from the record,[1] the parties agree that, for purposes of the policy language and summary judgment: (1) a carport is a structure; (2) the carport collapsed as a result of snow and ice; and (3) Ms. Crigger's personal property was damaged or destroyed by water or moisture when the ice and snow melted. (See Doc. No. 38 ¶¶ 12, 18; Doc. No. 41 ¶¶ 17, 19, 21, 23). Based on these facts, Plaintiff argues that there was coverage because "falling objects" in the form of snow and ice and the "weight of [that] ice [and] snow" caused damage to her personal property. State Farm insists there was no coverage because "water and moisture are not named perils" in the

---

[1] The record is a bit unclear on the extent to which the parties agree because of the way the Statements of Undisputed Material Facts are written. For example, instead of stating as a fact that "a carport is a structure," Ms. Crigger writes that "Lori Hartrich [a State Farm Team Manager] testified in her deposition that a carport is a 'structure,'" and "Mr. Sanderson [a State Farm's Claims Adjuster] agreed that a carport is a 'structure.'" (Doc. No. 41 ¶¶ 17, 21). This prompted State Farm to respond that both testified in their individual capacities only, that Mr. Sanderson "'guessed' a carport was a structure," and that, while Ms. Hartrich so testified, whether a carport is a structure is not "material to the issues before this Court." (Id.). Even so, the above "facts" do not appear to be in genuine dispute.

personal property coverage section of the policy and the personal items at issue were damaged or destroyed by "exposure to water by virtue of melting snow ice and/or snow[.]" (Doc. No. 34 at 2, 8).

Insofar as Ms. Crigger asserts that "the weight of the falling ice and snow caused the roof of the carport to collapse, and the ice and snow then fell *onto* the Personal Property that was inside a dry storage and melted," (Doc. No. 37 at 12), she presents a plausible claim for coverage under the "weight of the falling ice and snow" peril. Likewise, State Farm presents a reasonable argument that there is no coverage because the *weight* of the falling ice and snow did not cause the damage, and water are not covered perils. And it is precisely because reasonable arguments can be made on both sides that State Farm is not entitled to summary judgment.

"Tennessee law is clear that questions regarding the extent of insurance coverage present issues of law involving the interpretation of contractual language." Garrison v. Bickford, 377 S.W.3d 659, 663 (Tenn. 2012). Tennessee law is also clear that "contracts of insurance are strictly construed in favor of the insured, and if the disputed provision is susceptible to more than one plausible meaning, the meaning favorable to the insured controls." Id. at 664.

The reasonableness or plausibility of the competing arguments to the side, there are at least two other reasons why the Court finds coverage to exist under the policy. First, "the [policy] language in dispute should be examined in the context of the entire agreement. Phillips, 474 S.W.3d at 665. That examination suggests that if water damage and moisture were not a part of the peril encompassed by the "weight of ice, snow or sleet," then the policy would have made that clear – similar to the way that it made clear what was and was not covered in the event of a windstorm or hail:

6

> 2. **Windstorm or hail.** This peril does not include loss to property contained in a structure caused by rain, snow, sleet, sand, or dust. This limitation does not apply when the direct force of wind or hail damages the structure causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

(Doc. No. 32-1 at 15).

Second, the policy provides coverage for "accidental direct physical loss . . . caused by [a] peril." (Doc. No. 32-1 at 12). "Tennessee recognizes the concurrent cause doctrine, which provides that there is insurance coverage in a situation "where a nonexcluded cause is a substantial factor in producing the damage or injury, even though an excluded cause may have contributed in some form to the ultimate result and, standing alone, would have properly invoked the exclusion contained in the policy." Tennessee Farmers Mut. Ins. Co. v. Payne, No. W202100376COAR3CV, 2022 WL 1515566, at *4 (Tenn. Ct. App. May 13, 2022) (quoting Allstate Ins. Co. v. Watts, 811 S.W.2d 883, 887 (Tenn. 1991)). Although State Farm argues that the concurrent causation doctrine "is inapplicable here" because there was no "applicable peril that caused the loss," (Doc. No. 40 at 5), there is no dispute that the weight of snow and ice (a covered peril) caused the carport roof to collapse and the consequential melting of the snow and ice was a "substantial factor" in the damage to Ms. Crigger's personal property.

The conclusion that State Farm's Motion for Summary Judgment must be denied does not automatically mean that Ms. Crigger's Motion for Partial Summary Judgment should be granted as written, however. She moves "for entry of Partial Summary Judgment as to her claim for breach of contract, contained in Count 1 of the Complaint." (Doc. No. 30 at 1). Among other elements, "[w]hen a plaintiff alleges breach of contract, he or she is responsible for proving . . . damages caused by the breach of contract." BancorpSouth Bank, Inc. v. Hatchel, 223 S.W.3d 223, 227 (Tenn.

Ct. App. 2006). While Ms. Crigger claims in her Statement of Undisputed Facts that she submitted a claims for personal property loss in the amount of $129,856.80, "State Farm disputes the amount of the claim." (Doc. No. 41 at 5). On this record, the Court can only conclude that coverage exists under the policy, leaving it for the jury to determine the amount of damage, if any, caused by the melting snow and ice from the February 18, 2021 snowstorm and whether punitive damages are warranted due to bad faith on the part of State Farm.

## IV. Conclusion

For the foregoing reasons, Ms. Crigger's Motion for Partial Summary Judgment (Doc. No. 30) on her breach of contract claim is **GRANTED** on the issue of coverage, but **DENIED** on the question of damages. State Farm's Motion for Summary Judgment (Doc. No. 33) is **DENIED.**

Trial on Ms. Crigger's request for damages for breach of contract and her statutory claim for bad faith under Tenn. Code Ann. § 56-7-105 will be held beginning at 9:00 a.m. on **January 10, 2023**, and the final pretrial conference will be held on **January 3, 2023** at 3:00 p.m., both as previously scheduled.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE